UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KOHLER CO.,

                         Plaintiff,

        - against -

BOLD INTERNATIONAL FZCO and
ROCELL BATH LIMITED,

                         Defendants.

**MEMORANDUM
AND ORDER**
17-cv-4233 (LDH) (RLM)

LASHANN DEARCY HALL, United States District Judge:

        Plaintiff commenced this action on July 17, 2017.  (*See* Complaint, ECF No. 1.)

Defendants failed to answer or otherwise defend this case, and therefore defaulted on October 5,

2017.  (Clerk's Entry of Default, ECF No. 12.)  Plaintiff subsequently moved, pursuant to

Federal Rule of Civil Procedure 55(b)(2), for default judgment.  (Mot. for Default J., ECF No.

13.)  On October 23, 2017, the Court referred Plaintiff's motion to United States Magistrate

Judge Roanne L. Mann for a report and recommendation.

        On June 19, 2018, Magistrate Judge Mann issued a Report and Recommendation (the

"R&R"), wherein she recommended that Plaintiff Kohler Co.'s ("Kohler") motion for default

judgment against Defendants Bold International FZCO ("Bold") and Rocell Bath Limited

("Rocell") (collectively "Defendants") be granted in part and denied in part.  (R&R at 57-58,

ECF No. 33.)

        The R&R recommends that Plaintiff's motion for default judgment be granted with

respect to Plaintiff's trademark infringement and false designation of origin claims under the

Lanham Act and New York common law, and denied with respect to Plaintiff's unfair

- 1 -

competition and trademark dilution claims under New York law. (*Id.*) The R&R also recommends that the Court deny Plaintiff's request for injunctive relief. (*Id.* at 58.) On July 20, 2018, Plaintiff filed an objection requesting that the Court decline to adopt three aspects of Magistrate Judge Mann's R&R: *first*, the denial of Plaintiff's request for injunctive relief; *second*, the R&R's conclusion that Plaintiff's BOLD marks are only moderately strong; and *third*, the denial of Plaintiff's New York trademark dilution claim. (Obj. to R&R at 1, ECF No. 35.) Additionally, Plaintiff requests that the Court find Defendants liable for trademark infringement and false designation of origin claims under federal and New York law based on a Kohler mark that was registered after Plaintiff moved for default judgment but before Magistrate Judge Mann issued the R&R. (*Id.*) Finally, Plaintiff requests that the Court adopt the R&R's recommended entry of default judgment against Defendant Bold as to its trademark infringement and false designation of origin claims under the federal Lanham Act. (*Id.*)

The Court reviews any portion of the R&R that has been objected to *de novo*. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). As to the balance, "the district court need only satisfy itself that there is no clear error on the face of the record." *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (internal quotation marks and citations omitted)). For the reasons set forth below, the Court adopts Magistrate Judge Mann's thorough and well-reasoned opinion, with the exception of two harmless errors.

# BACKGROUND[1]

## I.     Plaintiff's Marks

Plaintiff Kohler created its first bathtubs and entered the plumbing business in 1883. (Compl. ¶ 10.)  In 1965, Plaintiff "introduced bathroom fixtures in vibrant colors, moving away from the pastels that had dominated the market since the 1920s." (*Id.* ¶ 14.)  In order to highlight these "boldly colored products[,]" Plaintiff, in 1967, began to market its products under the slogan THE BOLD LOOK OF KOHLER. (*Id.* ¶ 15.)  Plaintiff introduced environmentally conscious "low-consumption faucets, showerheads, and toilets in 1974." (*Id.* ¶ 17.)  In 1977, Plaintiff "launched its first whirlpool bath line." (*Id.* ¶ 18.)

Plaintiff has registered the following marks (the "Kohler BOLD Marks" or the "Marks") with the United States Patent and Trademark Office (the "USPTO"):

| Mark | Reg. No. | Filing Date | First Use | Reg. Status |
|------|----------|-------------|-----------|-------------|
| THE BOLD LOOK OF KOHLER | 1137310 | 01/22/1979 | 12/06/1978 | Registered |
| BOLD. PERFORMANCE. | 3890954 | 07/29/2009 | 03/31/2010 | Registered |
| BOLD. POWER. | 3901466 | 07/29/2009 | 10/31/2009 | Registered |
| BOLD. DESIGN. | 3927382 | 07/29/2009 | 10/31/2009 | Cancelled |
| BOLD. CONSERVATION. | 3982059 | 07/29/2009 | 11/30/2010 | Registered |
| BOLD. STYLE. | 3986327 | 07/29/2009 | 01/31/2010 | Registered |
| BOLD. DURABILITY. | 4049785 | 09/17/2009 | 03/31/2011 | Registered |
| BOLD. EXPERIENCE. | 4092003 | 10/18/2010 | 06/30/2010 | Registered |
| LIVE BOLD | 4298967 | 10/20/2011 | 04/30/2012 | Registered |
| BOLD[2] | 5475789 | 10/1/2014 | 11/28/2016 | Registered |

---

[1] The following facts are taken from Plaintiff's complaint and are assumed to be true for purposes of deciding the instant motion.

[2] At the time Plaintiff filed this lawsuit, its application for the BOLD mark was pending.  According to USPTO records submitted by Plaintiff to Magistrate Judge Mann, Plaintiff had not yet begun use of that mark. (Default J. Decl., Ex. B, ECF No. 19-2)  In its Objection, Plaintiff claims that the USPTO accepted Plaintiff's statement of use for the BOLD mark sometime in April 2018 and that the BOLD mark was registered on May 22, 2018. (Obj. to R&R at 2, ECF No. 35.)

(*Id.* ¶¶ 22-25; Obj. to R&R Ex. A, ECF No. 35.)  The Kohler BOLD Marks cover goods such as toilets, showerheads, bathtubs, sinks, and faucets.  (*Id.*)  THE BOLD LOOK OF KOHLER mark appears as follows:



Plaintiff has invested in marketing its goods.  In 1985, Plaintiff "opened its 36,000 square-foot Kohler Design Center for the purpose of showcasing the dramatic design of [its] kitchen and bath fixtures."  (Compl. ¶ 19.)  "In the U.S. alone, [Plaintiff] has expended in the tens of millions of dollars on the advertising and marketing of products under the [Kohler BOLD marks] in each of the last five years."  (Declaration of James M. Robinson, IV ("Robinson Decl.") ¶ 8, ECF No. 20.)  Plaintiff alleges that these marketing efforts have been successful.  (Compl. ¶ 23.)  "Kohler's sales of products sold under its BOLD trademarks has been in the hundreds of millions of dollars in annual sales in each of the last five years."  (Robinson Decl. ¶ 9.)  Plaintiff also claims that "[a]s a consequence of [this] extensive advertising, promotion, and use of the Kohler BOLD Marks, Kohler has developed enormous recognition for its goods and

---

[3] This image is the mark portion of the most recent specimen filed with the USPTO for the 1137310 registration. TSDR, Case ID 73200844, *Documents - Specimen*, USPTO.GOV (Jan. 30, 2008), http://tsdr.uspto.gov.

services under the [M]arks and has acquired and enjoys a valuable reputation and tremendous goodwill under them." (Compl. ¶ 23.)

## II.    Defendants' Alleged Infringement

Defendant Bold is a seller of various bathroom fixtures founded in the United Arab Emirates in 2011. (Compl. ¶¶ 5, 30-31.) That same year, Defendant Bold attempted to register the mark BOLD with the Office of Harmonization in the Internal Market (now known as the European Union Intellectual Property Office ("EUIPO")):



(*Id.* ¶ 38.) Plaintiff successfully opposed Defendant Bold's mark based on the likelihood of confusion with its own marks, and Defendant Bold's application was subsequently cancelled. (*Id.* ¶¶ 40-43.) In 2015, Defendant Bold attempted to register the same mark with the USPTO. (*Id.* ¶ 32.) The USPTO examiner refused to register the mark given the likelihood of confusion with Plaintiff's Marks. (*Id.* ¶¶ 34-35.)

In early 2016, Defendant Bold began selling its BOLD-branded goods through Defendant Rocell. (*Id.* ¶¶ 47-49.) Defendant Rocell maintains a supply of BOLD-branded footwashers in its Briarwood, New York warehouse, and sells those footwashers on Amazon.com. (*Id.* ¶ 52.) Defendant Bold also maintains a website at mybold.com. (*Id.* ¶ 31.) In January 2017, Defendant Bold exhibited its BOLD-branded products, including toilets, shower systems, sinks, faucets, and shower heads at a trade show in Orlando, Florida. (*Id.* ¶¶ 44-46.)

## DISCUSSION

### I.    Evidence Not Presented to the Magistrate Judge

Plaintiff claims that Magistrate Judge Mann's determinations as to Plaintiff's BOLD

mark rested on "a factual error that impacts its assessment of liability." (Obj. to R&R at 1.)

Specifically, Plaintiff objects that Magistrate Judge Mann referred to Plaintiff's BOLD mark as

"unregistered" and "yet-to-be-used," when, in fact, Plaintiff's BOLD mark was registered on

May 22, 2018, and its statement of use had been accepted in April 2018. (Obj. to R&R at 1-2.)

But what Plaintiff characterizes as "a factual error" is more properly characterized as a lack of

diligence on Plaintiff's part. That is, Plaintiff chose not to present evidence of the mark's

registration or use to Magistrate Judge Mann. This notwithstanding the fact that Plaintiff's

BOLD mark was registered and its statement of use accepted almost four weeks and two

months prior to when Magistrate Judge Mann issued the R&R, respectively. Notably,

Magistrate Judge Mann was forced to order Plaintiff to produce additional memoranda,

declarations, and evidence in support of its deficient motion for a default judgment on two

separate occasions. (*See* Nov. 9, 2017 Order, ECF No. 14 and March 16, 2018 Order, ECF No.

25.) And, Plaintiff's last submission to Magistrate Judge Mann, a declaration in support of its

motion for default judgment, was filed on May 2, 2018, two weeks after the USPTO accepted

Plaintiff's statement of use. (*See* Decl. of Ryan Ghiselli in Supp. Mot. for Default J., ECF No.

32.) Plaintiff could have used these opportunities to proffer this additional evidence to

Magistrate Judge Mann, but did not.

Against this backdrop, the Court will not use Plaintiff's belatedly adduced evidence to

find error in Magistrate Judge Mann's decision. The Second Circuit has found that

"[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for

the Magistrate Judge's consideration." *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). As such, the Second Circuit has routinely "upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review." *Id.* This is particularly the case where, as here, a party offers no justification for its failure to offer evidence to a magistrate judge. *See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (finding that a party "had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate"). Rather than proffer a justification, Plaintiff bizarrely suggests that Magistrate Judge Mann erred in failing to consider evidence that was never submitted to her. Plaintiff's objection is overruled.

## II. The Strength of Plaintiff's Marks

In finding that Defendants infringed on Plaintiff's Marks, Magistrate Judge Mann classified Plaintiff's Marks as "suggestive, but just barely so, indicating that they are of between weak and moderate inherent strength." (R&R at 21.) Plaintiff does not dispute Magistrate Judge Mann's classification of Plaintiff's Marks as suggestive. Instead, Plaintiff objects that Magistrate Judge Mann erred in finding that Plaintiff's suggestive Marks were of "barely moderate strength." (Obj. to R&R at 14.)

Plaintiff argues that, as a threshold matter, certain presumptions should have attached to the Marks, obviating the need for Magistrate Judge Mann to consider evidence of the Marks' distinctiveness in the marketplace. Specifically, Plaintiff maintains that Magistrate Judge Mann should have found that Plaintiff's Marks were distinctive and therefore strong because: (1) they were classified as suggestive; (2) they were registered with the USPTO; and (3) certain of Plaintiff's Marks were deemed incontestable by the USPTO. (Obj. to R&R at 15-17.)

Plaintiff also argues that, putting these presumptions aside, Magistrate Judge Mann failed to properly credit the evidence that Plaintiff presented regarding the distinctiveness of Plaintiff's Marks in the marketplace. (*Id.* at 15.) For the reasons set forth below, the Court is unpersuaded by Plaintiff's arguments, and finds that Magistrate Judge Mann considered and gave proper weight to these various presumptions and ultimately to the factors relevant to the distinctiveness of Plaintiff's Marks.

### A. Presumptions of Distinctiveness and Strength

#### i. *Suggestive marks are not presumed to be inherently strong*

Plaintiff first argues that suggestive marks are presumptively distinctive and therefore strong. (Obj. to R&R at 15-16.) Plaintiff is incorrect.

The Second Circuit long ago rejected the notion that the analytical category into which a trademark is sorted is conclusive as to its strength. *See Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988) ("Although the category in which the mark qualifies—generic, descriptive, suggestive, or arbitrary—is useful in determining its strength, it is not dispositive."); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("Suggestiveness . . . does not necessarily determine the issue regarding the strength of the mark."); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993) ("[A] finding of suggestiveness does not guarantee a determination that the mark is a strong one."). That is, "[t]he fact that [a] mark is suggestive is not necessarily controlling on the issue of its strength. Instead, 'the strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public.'" *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 76 (2d Cir. 1988) (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979) (internal citation omitted). Indeed, the Second Circuit has itself found

certain suggestive marks to be weak or only moderately strong. *See, e.g.*, *Banff, Ltd.*, 841 F.2d at 491-92 (finding that the mark "Bee Wear" was suggestive and weak); *W.W.W. Pharm. Co.*, 984 F.2d at 573 (affirming district court's decision that a suggestive mark was "only moderately strong, deserving of trademark protection, but not entitled to the fullest protection available under the law"); *Streetwise Maps, Inc.*, 159 F.3d at 744 (finding that a district court's determination that a suggestive mark was "relatively strong" was clear error).

In pressing its argument that suggestive marks are considered inherently distinctive and therefore strong, Plaintiff directs the Court to *Hasbro, Inc. v. Lanard Toys, Ltd.*. (Obj. at 15-16.) In *Hasbro*, the Second Circuit rejected a defendant's argument that the court was required to review evidence of secondary meaning in assessing a suggestive mark's strength. 858 F.2d at 77. Specifically, the Second Circuit found that the defendant "offer[ed] no reason to depart from the general rule that a suggestive term is presumptively entitled to protection and recognition as a strong mark without proof of secondary meaning." *Id.* As an initial matter, the Second Circuit expressly cabined its holding in *Hasbro* to "the preliminary injunction stage of litigation." *Id.* Further, the Second Circuit has previously made clear that the "general rule" relied upon in *Hasbro* may apply more narrowly than as articulated by Plaintiff. While not expressly limiting a broader application of the "general rule," in *McGregor-Doniger*, the Second Circuit explained that it would clearly apply in two circumstances: *first*, "[w]here the products involved are competitive and the marks quite similar," and *second*, "where the marks involved are virtually identical, even if the products are non-competitive. . . ." 599 F.2d at 1132.

The marks at issue here do not fall into either of the two categories identified by the Second Circuit as triggering the "general rule." That is, Plaintiff has failed to allege facts

supporting a finding that the products involved are either competitive or "quite similar." *McGregor-Doniger, Inc.*, 599 F.2d at 1132.

To determine whether products compete with one another, courts consider "whether the products differ in content, geographic distribution, market position, and audience appeal." *W.W.W. Pharm. Co.*, 984 F.2d at 573. The Second Circuit has also found that functional distinctions and price differentiation between the products at issue are also relevant to whether such products compete. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 396 (2d Cir. 1995). Plaintiff failed to allege facts relevant to any of these factors. Specifically, Plaintiff failed to allege that its products are distributed through the same channels, in the same geographic markets, to the same audience, and at or around the same price as Defendants' products. While Plaintiff alleges that Defendants sells BOLD footwashers on Amazon.com and BOLD footwashers and faucets through the website rocellbath.com, (Compl. ¶¶ 47, 52-53,) Plaintiff does not claim to sell its own products on the internet. And, while faucets are similar to the bath fixtures and appliances manufactured by Plaintiff, Plaintiff does not sell footwashers. (*See* Robinson Decl. ¶ 12.) Moreover, as noted by Magistrate Judge Mann, and confirmed by this Court, Defendants' products are no longer even available on Amazon.com and the website rocellbath.com is not currently functioning. (*See* R&R at 55 n.24.)

The only specific allegation made by Plaintiff with respect to competitive proximity is that Defendant displayed its products at the same trade show as Plaintiff. (Compl. ¶¶ 44-46.) But the Second Circuit has rejected far more detailed evidence of competitive proximity. *See W.W.W. Pharm. Co.*, 984 F.2d at 574 (finding lack of competitive proximity where products were sold in the same stores but "not displayed in the same areas"). Because Plaintiff has failed to allege competitive proximity beyond a single trade show, the Court finds that Plaintiff

has failed to plausibly allege that its products compete with Defendants' products.[4] And, as described in greater detail with respect to Plaintiff's New York trademark dilution claim, the Court finds that Plaintiff's Marks are only moderately similar to Defendants' mark. Therefore, the "general rule" that suggestive marks are presumably distinctive and therefore strong applies with little force here. Instead, consistent with the Second Circuit's guidance, it was appropriate for Magistrate Judge Mann to look beyond the Kohler BOLD marks' analytical category to the evidence provided by Plaintiff supporting Plaintiff's Marks' distinctiveness in the marketplace. As discussed in further detail below, that evidence was wanting.

### ii. *Plaintiff's over-reliance on the presumption of registration*

Plaintiff similarly misapprehends the presumption that attaches to registered marks. In particular, Plaintiff claims that the registration of a mark creates a rebuttable presumption that a mark is distinctive. (Obj. to R&R at 14-15.) Plaintiff contends that Defendants' default constitutes a "tacit admission" of the distinctiveness of Plaintiff's Marks and therefore Magistrate Judge Mann should have found that Plaintiff's Marks were strong. (*Id.* at 15.)

As an initial matter, Plaintiff cites no cases standing for the proposition that a defendant's default presumptively establishes the distinctiveness of a mark. To the contrary, the Second Circuit has repeatedly instructed district courts that while a non-defaulting party is entitled to all reasonable inferences from the evidence offered, district courts are required to determine whether the allegations by a non-defaulting party establish liability as a matter of law. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

---

[4] Magistrate Judge Mann found that the Kohler BOLD marks and Defendants' mark were only "in a moderate degree of competitive proximity." (R&R at 30, 49.) While the Court disagrees with this finding, it does not undermine Magistrate Judge Mann's conclusion, based on the totality of the *Polaroid* factors, that Plaintiff was entitled to default judgment against Defendants for federal trademark infringement.

Moreover, Plaintiff places too much emphasis on the presumption that attaches to the registration of a mark. It is true that once a trademark is registered with the USPTO, it creates a rebuttable presumption of distinctiveness. "Registration by the [US]PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). But the fact that a mark is deemed "more than merely descriptive," does not mean that a mark is necessarily strong. "The 'strength of the mark' analysis focuses on the distinctiveness of the mark, and while registered marks enjoy a presumption of distinctiveness . . . a registered mark may still be deemed weak." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018); *see, e.g.*, *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 581 (2d Cir. 1991) (affirming district court's determination that a registered suggestive mark was weak); *Plus Prod. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983) (same); *Streetwise Maps, Inc.*, 159 F.3d at 744 (reversing district court's finding that a registered suggestive mark was "relatively strong"). Here, in keeping with the presumption, Magistrate Judge Mann found that Plaintiff's registered marks were more than merely descriptive: the marks were suggestive. (R&R at 18.) Therefore, Magistrate Judge Mann properly considered and credited the presumption of registration.

### iii.   Incontestable marks are not inherently strong

Plaintiff objects that Magistrate Judge Mann failed to accord proper weight to Plaintiff's allegation that two of its marks are incontestable.[5] (Obj. to R&R at 16-17.) Under 15 U.S.C.

---

[5] While Plaintiff proffered to the Magistrate Judge that two of its marks are incontestable (THE BOLD LOOK OF KOHLER and BOLD.POWER), in its Objection, Plaintiff argues that three additional marks have been recognized as incontestable (BOLD.DURABILITY, BOLD.STYLE, and BOLD.PERFORMANCE) and two additional marks

§ 1065, an incontestable mark is one that has been in continuous use for five consecutive years following its registration, providing it meets four factors: (1) there has been no adverse final decision related to the owner's right to the mark; (2) there is no proceeding involving the mark pending in the USPTO or in a court; (3) an affidavit attesting to these factors is filed with the Director of the USPTO; and (4) the mark is not generic. 15 U.S.C. § 1065. These elements have been met.

Plaintiff's complaint alleges that "Registration Nos. 1137310 [(THE BOLD LOOK OF KOHLER)] and 3901466 [(BOLD. POWER.)] are incontestable under Lanham Act Section 15." (Compl. ¶ 27.) Plaintiff also submitted copies of the certificates of registration and status of these marks to Magistrate Judge Mann, indicating that affidavits of incontestability had been accepted by the USPTO. (Decl. of Angela S. Kalsi in Support of Plaintiff's Mot. for Default J., Exhibit A, *3, *8, ECF No. 19-1.) In light of these allegations and supporting evidence, the Court agrees that Magistrate Judge Mann erred in finding that Plaintiff had not established the incontestability of THE BOLD LOOK OF KOHLER and BOLD. POWER marks. The Court does not agree, however, as urged by Plaintiff, that the incontestability of these marks undermines Magistrate Judge Mann's ultimate findings as to the strength of the Marks. Indeed, Magistrate Judge expressly noted that "a finding of incontestability would not materially impact" her evaluation of the strength of Plaintiff's Marks. (R&R at 3 n.1.)

While incontestability is treated as conclusive as to the protectability of a mark, it is only one factor of many to consider in determining the strength of a mark. *See, e.g.*, *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 961 (2d Cir. 1996) (noting that courts "must

---

have declarations of incontestability pending before the USPTO (BOLD.EXPERIENCE and BOLD.CONSERVATION). (Obj. to R&R at 16.) For the reasons set for in Section I *supra*, the Court declines to consider this additional evidence, which should have been provided to Magistrate Judge Mann for her consideration.

look beyond the incontestability of the mark to independent indicia of strength . . . [because] . . . independent indicia of strength is relevant to deciding whether the strength of the mark weighs in favor or against a finding of likelihood of confusion"); *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993) (holding that "incontestability does not relieve the trademark owner from the requirement of proving likelihood of confusion"); *see also* 2 McCarthy on Trademarks and Unfair Competition § 11:82 (5th ed.) ("The fact that a trademark is the subject of a federal registration that has ripened into incontestable status does not support the conclusion that the mark is 'strong.'"). Here, the incontestability of two of Plaintiff's marks does not overcome the deficiencies in Plaintiff's evidence of distinctiveness in the marketplace, as discussed in greater detail below.

### B. Distinctiveness in the Marketplace of Plaintiff's Marks

Beyond the presumptions discussed above, to determine the strength of a mark, courts in this Circuit look to evidence of the mark's distinctiveness in the marketplace, also known as a mark's secondary meaning. Secondary meaning, refers to "the extent to which the public has come to identify the mark with a particular product." *W.W.W. Pharm. Co.*, 984 F.2d at 572-73. In determining secondary meaning, courts consider: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987).

In its complaint, Plaintiff alleges that it began marketing products under the tagline THE BOLD LOOK OF KOHLER in 1967. (Compl. ¶ 15.) Plaintiff also alleges that it maintains a 36,000 square-foot center for showcasing its designs, has won numerous awards for its products, and that it "has developed enormous recognition for its goods and services." (Compl. ¶¶ 19-20,

23.)  Plaintiff also submitted a declaration stating that it had "expended in the tens of millions of dollars on the advertising and marketing of products under the BOLD family of marks in each of the last five years" and that these efforts had generated "hundreds of millions of dollars in annual sales in each of the last five years."  (Robinson Decl. ¶¶ 8-9.)

Magistrate Judge Mann properly credited these allegations and evidence.  (R&R at 23.)  Magistrate Judge Mann found, however, that Plaintiff failed to provide the type of evidence that the Second Circuit has routinely cited as proof of secondary meaning.  (R&R at 22-23.)  Once again, the Court finds no error in Magistrate Judge Mann's determination.

The Second Circuit has credited a wide variety of evidence as proof of a mark's distinctiveness in the marketplace.  For example, in *Harlequin Enterprises Ltd. v. Gulf & W. Corp.*, the plaintiff proffered consumer surveys indicating that 50% of polled consumers correctly identified the producer based on the mark at issue.  644 F.2d 946, 950 n. 2 (2d Cir. 1981); *see also Playtex Prod., Inc. v. Georgia-Pac. Corp.*, 390 F.3d 158, 164 (2d Cir. 2004) (crediting marketing and consumer studies as proof of the strength of a mark).  Similarly, in *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, the plaintiff "produced examples of its advertisements and an impressive volume of articles which had appeared in publications including the New York Times, The New Yorker, Vogue, Town & Country, Harper's Bazaar, and Mademoiselle . . .  [as] evidence that plaintiff was recognized as a leader in the fashion industry."  544 F.2d 1167, 1170 (2d Cir. 1976).  The *Scarves by Vera* plaintiff even "called three experts on the fashion industry who testified that plaintiff was recognized among the top 'name' designers."  *Id.*  In *Nora Beverages*, the Second Circuit credited studies demonstrating the comparative commercial success of a product as well as advertising surveys indicating that the plaintiff's product "was a virtual unknown compared to other leading" producers.  *Nora*

*Beverages, Inc. v. Perrier Grp. of Am., Inc.*, No. 5:91-CV-780 (EBB), 1999 WL 958608, at *4

(D. Conn. Oct. 14, 1999), *aff'd*, 269 F.3d 114 (2d Cir. 2001). The *Nora Beverages* court found it

"significant that plaintiff[s], though possessed of the financial means, did not undertake a survey

of public consumer reaction to the product under actual marketing conditions." *Id.* (quoting

*Information Clearing House v. Find Magazine*, 492 F .Supp. 147, 160 (S.D.N.Y. 1980)). The

Court finds it similarly significant here.

Plaintiff objects that courts have not specifically required plaintiffs to demonstrate market

strength with proof of how its marketing compared to its competitors. (Obj. to R&R at 17.)

While the Court agrees that such proof may not be required in every case, the fact that Plaintiff's

Marks were "barely suggestive," (R&R at 18,) and deficiencies in the limited evidence Plaintiff

did present, required additional proof in this case. For example, while Plaintiff claims to have

"expended in the tens of millions of dollars on the advertising and marketing of products under

the BOLD family of marks in each of the last five years," (Robinson Decl. ¶ 8,) courts in this

Circuit have long recognized that the amount spent on advertising does not necessarily indicate

the extent to which customers are aware of specific marks. *See, e.g.*, *Exquisite Form Indus., Inc.

v. Exquisite Fabrics of London*, 378 F. Supp. 403, 411 (S.D.N.Y. 1974) (holding "a mere

showing of advertising does not provide a basis for determining the extent of customer

awareness of a mark"); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp.

2d 340, 371 (E.D.N.Y. 2007) (same); *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F.

Supp. 2d 442, 450-51 (S.D.N.Y. 2008) (same). As Magistrate Judge Mann correctly noted, if

Plaintiff's competitors are investing $100 million on advertising, the fact that Plaintiff is

investing $10 million could suggest that Plaintiff's Marks are weak and not strong. Further,

while Plaintiff provides general allegations as to its sales, it fails to identify which specific marks

generated these sales.[6] The same deficiency applies to Plaintiff's allegations of its generalized marketing. Plaintiff alleges the infringement of ten separate marks, but fails to provide evidence supporting sales or marketing expenses related to each individual mark. Blanket allegations as to gross sales and marketing expenses of ten marks in the aggregate cannot support the conclusion that consumers are aware of any specific mark.

Indeed, even after Magistrate Judge Mann directed Plaintiff to correct deficiencies in its filings, Plaintiff chose to rest on general and conclusory allegations as to its sales and marketing expenditures. While the Court credits the limited evidence presented by Plaintiff as to the secondary meaning of the Marks, the Court finds, as did Magistrate Judge Mann, that this evidence only suggests that Plaintiff's marks are of moderate strength, particularly where Plaintiff's marks are only barely suggestive.

## III.    Plaintiff's Request for Equitable Relief

Plaintiff requested a broad array of equitable relief. *First*, Plaintiff requested that the Court enjoin Defendants from:

> "manufacturing, procuring, storing, promoting, distributing, and/or selling products using the Kohler BOLD Marks, or any name or mark that wholly incorporates the Kohler BOLD Marks or is confusingly similar to or a colorable imitation of those marks . . . and . . . committing any other acts calculated or likely (1) to cause confusion or mistake in the minds of the public or to deceive consumers into believing that Defendants' goods and services are associated or affiliated with, or endorsed or sponsored by, Kohler, or (2) to dilute the distinctive quality of the Kohler BOLD Marks."

(Pl.'s Mot. for Default J., Exhibit 3 ¶ 3, ECF No. 13-3.) *Second*, Plaintiff requested that the Court order Defendants to permanently transfer to Plaintiff the MYBOLD.COM domain name

---

[6] For example, in *Lang*, the Second Circuit found it telling that the plaintiff's sales were attributable to only one of its products, suggesting that marks for other of its products were not associated in the public's mind with the plaintiff. 949 F.2d at 581.

and other domain names containing the word BOLD.  (*Id.* ¶ 4.)  *Third*, Plaintiff requested that

the Court order Defendants to withdraw their trademark application and refrain from filing any

confusingly similar marks.  (*Id.* ¶ 5.)  *Fourth*, Plaintiff requested that the Court order Defendants

to destroy or deliver for destruction any material, including electronic data, bearing a mark

confusingly similar to Plaintiff's marks.  (*Id.* ¶ 6.)  *Fifth*, Plaintiff requested that the Court order

Defendants to serve a written report under oath setting forth their compliance with these

requests.  (*Id.* ¶ 7.)

As Magistrate Judge Mann correctly noted, a plaintiff seeking injunctive relief in this

Circuit must satisfy the four factor test set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

388, 391 (2006).  "A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for

that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction."  *Id.*  In *eBay*, the Supreme Court made clear that each of these factors

must be satisfied for a court to award injunctive relief and that an injunction could not

automatically follow a determination of infringement.  *Id.* at 392-93.  Ultimately, Magistrate

Judge Mann found that Plaintiff failed to prove that it would suffer irreparable harm absent an

injunction, and therefore Plaintiff was not entitled to equitable relief.  (R&R at 53-55.)  The

Court agrees.[7]

---

[7] Plaintiff contends that in assessing the first *eBay* factor (irreparable harm), the Court should also examine the second *eBay* factor (whether remedies at law are inadequate).  (Obj. to R&R at 6.)  In other words, Plaintiff suggests that it can cure its deficiencies with respect to the first factor with proof relevant to the second factor.  While the Second Circuit has indicated that a court should consider whether the "remedies available at law, such as monetary damages, are inadequate to compensate for [a plaintiff's] injury," this presumes that a plaintiff has actually provided evidence of an injury.  *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay*, 547 U.S. at 391)).  Here, where Plaintiff has provided no evidence of injury in the first instance, the Court need not determine whether monetary damages would be sufficient to compensate Plaintiff.

Magistrate Judge Mann found "that it is just barely plausible that there is a likelihood that defendants' use of the BOLD mark will cause confusion as to the origin or sponsorship of its products" and therefore recommended that the Court enter default judgment against Defendants for trademark infringement.  (R&R at 44-45.)  Plaintiff argues that its "success on the merits alone strongly supports granting an injunction in this case."  (Obj. to R&R at 3.)  This argument, however, contradicts the Second Circuit's clear guidance that courts cannot simply presume irreparable harm.  Rather, consistent with *eBay*, to establish the requisite harm, "[P]laintiff[ ] must show that . . . the failure to issue an injunction would *actually cause* irreparable harm."  *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (internal citation omitted) (emphasis added).

Plaintiff has produced evidence that it has spent considerable amounts of money marketing and advertising its products under the BOLD marks.  (Robinson Decl. ¶ 8.)  Plaintiff argues that the millions of dollars in annual sales resulting from these efforts "provides strong evidence of the power of the goodwill engendered in the BOLD Marks and high reputation credited to products sold under the marks."  (Obj. to R&R at 4.)  Even accepting this as true, however, Plaintiff has provided no evidence that its Marks' goodwill and "high reputation" have been in any way harmed by Defendants' infringement.  Magistrate Judge Mann noted that in those cases where courts have found irreparable injury, the plaintiff had provided evidence that it had lost control over its reputation, lost goodwill due to the inferiority of a defendant's goods and services, or that consumers had in fact confused the defendant's products for its own.  (R&R at 54.)

The cases cited by Plaintiff in its Objection are consistent with Magistrate Judge Mann's assessment.  For example, in *Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, the court

found the necessary irreparable harm only after the plaintiff had provided "evidence of actual consumer (and retailer) confusion." No. 15-CV-1092 JMF, 2015 WL 845711, at *6 (S.D.N.Y. Feb. 26, 2015). Specifically, the plaintiff included statements from retailers describing how they had inaccurately labeled the defendant's products as the plaintiff's products and complaints from consumers who had mistakenly purchased the defendant's products. *Id.* at *7. Similarly, in *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, the plaintiff presented two separate consumer surveys of more than 800 individuals, which found that more than 25% of surveyed consumers were confused. 800 F. Supp. 2d 515, 532-33 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013). Plaintiff failed to provide any such evidence here.

The only specific example of harm provided by Plaintiff is the fact that Plaintiff and Defendant exhibited their goods at the same 2017 Kitchen & Bath Industry Show "in front of the same buyers." (Obj. to R&R at 5.) Notably, Plaintiff does not assert that a single one of these buyers confused Defendants' products for Plaintiff's products. (*Id.*) To the extent that even one of these buyers confused Defendants' products for Plaintiff's, Plaintiff presumably would have included evidence to that effect. The fact that Plaintiff has not done so is telling. *See McGregor-Doniger Inc.*, 599 F.2d at 1136 ("While a plaintiff need not prove actual confusion in order to prevail, . . . it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion.") (internal citations and quotations omitted). On this record, the Court finds that Plaintiff has not established irreparable harm.[8]

---

[8] Plaintiff suggests that Defendants' default prevented it from taking discovery that would have provided the evidence necessary to support this factor. (Obj. to R&R at 9-10.) Nonsense. Plaintiff's ability to conduct consumer surveys or, at the least, provide attestations from confused retailers or consumers was in no way impeded by Defendants' default. Defendants were not in unique possession of any information necessary to conduct such surveys or interviews.

Plaintiff also maintains that Magistrate Judge Mann erred in finding that the scope of Plaintiff's requested injunctive relief was overbroad, arguing that Magistrate Judge Mann should have tailored the relief rather than rejecting it outright. (Obj. to R&R at 11-14.) Because the Court finds that Plaintiff has failed to meet the first *eBay* factor, however, the Court need not reach this argument.

## IV. Plaintiff's New York Trademark Dilution Claim

Under New York law, a plaintiff can prove trademark dilution under a dilution or tarnishment theory. Plaintiff alleged a dilution theory, which requires proof of six factors: "(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." *See New York Stock Exch., Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002). Notably, "New York law does not permit a dilution claim unless the marks are 'substantially' similar." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009)

Here, Magistrate Judge Mann recommended that the dilution claim be denied based on a finding that Defendant Bold's mark was not similar enough to Plaintiff's Marks to satisfy New York law. Plaintiff objects, arguing that Defendant Bold's mark is "identical and highly similar" to its own. (Obj. to R&R at 18.)

Plaintiff's Mark:



Defendant Bold's Mark:



The fact that the word BOLD appears in both marks establishes some similarity. However, some similarity is not sufficient to give rise to a dilution claim. Rather, "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Lapine v. Seinfeld*, 375 F. App'x 81, 82 (2d Cir. 2010) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)) (alteration in original). Here, that ordinary observer would not.

The word BOLD appears alone in Defendant Bold's mark, while it is used as a modifier in conjunction with other words in Plaintiff's marks. Plaintiff asserted in its arguments that BOLD is the dominant word in its marks, and therefore Defendant Bold's mark should be considered substantially similar to Plaintiff's. (Pl.'s Mem. in Support of Default J. 13.) But Plaintiff provides nothing beyond its own *ipse dixit* to support the contention that BOLD is the dominant word in Plaintiff's marks. Indeed, in the mark THE BOLD LOOK OF KOHLER, the words LOOK or KOHLER could just as easily be considered dominant. *C.f. Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (finding that between the two marks "The Morningside Group Limited" and "Morningside Capital Group, L.L.C.," "[o]nly one word stands out as dominant in the two names"). Further, the fact that Plaintiff uses the word BOLD in multiple marks does not necessarily make it the dominant word in any individual mark.

Aside from the word BOLD appearing in both marks, there is no aesthetic similarity between the marks. As Magistrate Judge Mann found, (R&R at 25-26,) the font of Plaintiff's BOLD mark is set in narrow, crisp, angular type-face, with all capital letters. Defendant Bold's mark, however, has (literally) bold, rounded, all lower-case, and contiguous lettering. Further,

Defendant Bold's mark incorporates mirrored gaps in the B and D letters, as well as a small filled circle within the O letter. Given the lack of similarity between the two marks, the Court agrees with Magistrate Judge Mann's assessment that Plaintiff's New York trademark dilution claim must be denied.

## CONCLUSION

The Court has reviewed the remaining portions of the R&R for clear error and, finding none, hereby adopts Magistrate Judge Mann's R&R as the opinion of this Court, with the exception of Magistrate Judge Mann's harmless errors as to incontestability and competitive proximity. For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED in part and DENIED in part. Defendants are liable for trademark infringement and false designation of origin under the Lanham Act and New York common law, except as to the BOLD mark. Plaintiff's request for equitable relief is DENIED.

Dated: September 29, 2018
Brooklyn, New York

SO ORDERED:

_____/s/LDH_____
LaSHANN DeARCY HALL
United States District Judge